UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NIKITA JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-1520-B |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL | § | |
| CENTER, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant University of Texas Southwestern Medical Center ("UT Southwestern")'s Motion to Dismiss (Doc. 8). For the following reasons, the Court **GRANTS** UT Southwestern's Motion.

I.

BACKGROUND[1]

This is an employment discrimination case. Plaintiff Nikita Jones is a black woman who served as a financial analyst for UT Southwestern for five years. Doc. 1, Compl., ¶¶ 14–15. Jones alleges she was subjected to discrimination throughout her employment due to her race and disability. *Id.* ¶ 15. Jones further alleges that her complaints regarding this discrimination were ignored by UT Southwestern and resulted in harassment and retaliation against her. *See id*. This alleged mistreatment led to her resignation in November 2019, which Jones alleges constituted a constructive discharge. *Id.* ¶ 26.

---

[1] The Court derives the factual background from Jones's Complaint (Doc. 1).

Jones claims she first reported the discrimination in October 2016. *Id.* ¶ 16. She emailed her supervisor, Donna Norman, to complain that "her team was only earning 80% of the market average salary for their role, while the other finance team, led by Tim Atkinson . . . , a White man, was earning 99% of that market average salary." *Id.* Norman did not respond. *Id.* Norman later allegedly told Jones "she found the email confrontational" and to not "compare herself to [Atkinson]." *Id.* In 2017 Norman asked her to perform additional timekeeping duties in addition to her existing duties without a pay raise. *Id.* ¶ 17. Additionally, Jones claims UT Southwestern hired a less experienced white male and paid him $8,000 more than Jones. *Id.*

Jones claims that she was retaliated against at her annual review because of her complaint regarding the pay discrepancy. During annual reviews, supervisors allocated a certain number of merits to each employee dependent on their performance. *Id.* ¶ 18. UT Southwestern used these merits to calculate pay raises. *Id.* At Jones's annual review, Norman allotted Jones no merits and instead allotted all available merits to a white male. *Id.* Jones claims Norman "caused her to lose income that she otherwise may have been awarded due to her performance." *Id.*

Jones claims UT Southwestern continued to ignore her complaints regarding discrimination. In 2018, Jones complained to Employee Relations about Norman because "she felt [] Norman treated her differently and with hostility because of her race." *Id.* ¶ 19. Employee Relations instructed Norman to participate in a leadership course. *Id.* However, Jones claims Employee Relations did not seriously consider her complaint because this course was already required for senior management officials. *Id.*

On August 1, 2019, Jones took leave to deal with mental health issues. *Id.* ¶ 20. She was experiencing anxiety and panic attacks as a result of Norman's treatment. *Id.* Before returning from leave, Jones requested an accommodation allowing her to work from home and submitted a

doctor's note supporting her condition. *Id.* ¶ 22. UT Southwestern's Human Resources department rejected Jones's request. *Id.* Jones claims Human Resources should have provided her an interview before denying her request. *Id.* Further, other white employees were able to work from home under Norman's supervision. *Id.* However, when Jones returned from leave on October 23, 2019, UT Southwestern allowed her to arrive early and leave early on designated days. *Id.* ¶ 23.

In November 2019, Jones raised concerns to Norman regarding another financial analyst, a black woman, who requested a raise after Norman assigned her additional duties. *Id.* ¶ 24. Norman allegedly refused to grant the employee a raise and "asked her why she was so confrontational." *Id.* Another financial analyst, a white male, requested a raise and Norman granted it. *Id.*

Finally, on November 19, 2019, Norman scheduled a meeting with her to discuss Jones's concerns about Norman's actions. *Id.* ¶ 26. The meeting was scheduled for a time Jones was permitted to leave work early. *Id.* When Jones notified Norman that she could not attend the meeting, "Norman berated her." *Id.* Jones "felt she could no longer handle [] Norman's discrimination" and resigned that day. *Id.* Jones claims UT Southwestern replaced her with a white male and paid him $20,000 to $25,000 more annually than they paid her. *Id.* ¶ 27.

Jones filed a complaint of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC") on August 26, 2020, and subsequently received her Notice of Right to Sue. Doc. 8-1, App., Ex. A, 1; Doc. 1, Compl., ¶¶ 12–13. Jones filed her complaint in this Court on July 13, 2022. *See* Doc. 1, Compl. Jones alleges discrimination, retaliation, and failure to accommodate under the Texas Commission on Human Rights Act ("TCHRA"), Section 1981, Rehabilitation Act, and Title VII. *Id.* at 1. UT

Southwestern subsequently filed its Motion to Dismiss. *See* Doc. 8, Mot. Dismiss. The Motion is ripe for review, and the Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

A. *Timeliness of Jones's Claims*

The Court first addresses the timeliness of Jones's claims. UT Southwestern argues that the majority of the allegedly discriminatory or retaliatory actions are time barred. Doc. 8, Mot. Dismiss, 1. Jones presents no rebuttal to UT Southwestern's argument that most of the alleged actions underlying her claims are time barred. *See generally* Doc. 16, Resp. By failing to respond, Jones essentially concedes that these actions cannot form the basis of her claims. However, even without these concessions, the Court agrees that the majority of the actions alleged in Jones's Complaint are time barred.

1. Title VII and TCHRA Claims

A plaintiff must exhaust certain administrative remedies before filing a charge of discrimination under Title VII and TCHRA. Title VII requires that a plaintiff file a charge of discrimination with the EEOC within 300 days after the alleged unlawful act occurs. 42 U.S.C. § 2000e–5(e)(1). TCHRA requires a complaint be filed with the TWC no later than 180 days after the alleged unlawful act occurs. Tex. Lab. Code § 21.202(a).

Here, most of the actions alleged in Jones's Complaint are time barred under Title VII and cannot form the basis of a Title VII claim. Jones's EEOC charge of discrimination and retaliation was filed on August 26, 2020. Doc. 8-1, App. 1. Any improper action that occurred more than 300 days prior to that filing, or November 1, 2019, is therefore time barred under Title VII. 42 U.S.C. § 2000e–5(e)(1). Thus, Jones's allegations of unequal pay, Norman's alleged retaliation in awarding her merits to another employer, Norman tasking Jones with additional work with no additional

pay, the denial of her request for accommodations, and any other actions prior to November 1, 2019, are time barred under Title VII. *See* Doc. 1, Compl., ¶¶ 16–23.

Similarly, all the actions alleged in Jones's Complaint are time barred under TCHRA and cannot form the basis of a TCHRA claim. Jones's TWC charge of discrimination and retaliation was filed on August 26, 2020. *Id.* ¶ 12; Doc. 8-1, App. 1. Any improper action that occurred more than 180 days prior to that filing, or February 28, 2020, is therefore time barred under TCHRA. *See* Tex. Lab. Code § 21.202(a). Thus, given all the conduct alleged by Jones occurred prior to February 28, 2020, she cannot state a TCHRA claim. *See* Doc. 1, Compl., ¶¶ 16–28.

To the extent Jones seeks relief for these time-barred actions under Title VII and TCHRA, these claims are **DISMISSED**.

    2.    <u>Section 1981 and Rehabilitation Act Claims</u>

"Federal civil rights actions brought under 42 U.S.C. § 1981, which lacks an express statute of limitations, are governed by the most closely analogous limitations period provided under state law." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003) (citing *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 462 (1975)). When a § 1981 claim "is brought in Texas, the two-year statute of limitations for personal injury actions in Texas controls." *Id.* Similarly, "the Fifth Circuit has applied Texas' two-year limitations period for personal injury actions to discrimination claims under the Rehabilitation Act." *Bernard v. ATC VanCom*, 2005 WL 139110, at *3 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J.) (citing *Hickey v. Irving Indep. Sch. Dist.,* 976 F.2d 980, 982–83 (5th Cir. 1992)).

Here, Jones resigned from her position at UT Southwestern on November 19, 2019, asserting discrimination, retaliation, and constructive discharge after being allegedly berated by Norman. *See* Doc. 1, Compl., ¶ 26. Therefore, the latest date Jones could have filed her lawsuit

was November 19, 2021. *See Jones*, 339 F.3d at 364 (stating a claim under § 1981 has a two-year statute of limitations); *Bernard*, 2005 WL 139110, at *3 (stating a claim under the Rehabilitation Act has a two-year statute of limitations). Jones filed her lawsuit on July 13, 2022. *See* Doc. 1, Compl. Thus, Jones's Section 1981 and Rehabilitation Act claims are time barred and **DISMISSED**.

B.   *Merits of Jones's Claims*

The Court now addresses if the timely actions in Jones's Complaint state a claim for discrimination, retaliation, or constructive discharge. Because Jones's TCHRA, § 1981, and Rehabilitation Act claims are time barred, the Court only considers whether Jones states a claim under Title VII. As discussed above, any alleged action which occurred prior to November 1, 2019, is time barred under Title VII. Thus, Jones's claims are limited to (1) her allegation that Norman refused to provide a black woman a raise when asked but granted the request of a white male and (2) her allegation that Norman scheduled a meeting with Jones on a day she was permitted to leave early and berated Jones when she informed Norman she was unavailable, leading to Jones's resignation. *See id.* ¶¶ 24, 26. UT Southwestern argues neither of these instances can form the basis of a discrimination, retaliation, or constructive discharge claim under Title VII. *See* Doc. 8, Mot. Dismiss, 12–18. The Court agrees.

   1.   Discrimination

Title VII makes it unlawful for employers to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate "(1) that she is a member of a protected class; (2) that she was qualified for the position at issue; (3) that she was the subject of

an adverse employment action; and (4) that she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 385 (5th Cir. 2018) (internal quotations and alteration omitted).

Here, UT Southwestern argues Jones fails to allege both an adverse employment action and that she was treated less favorably because of her membership in a protected class. Doc. 8, Mot. Dismiss, 1. Jones appears to abandon her discrimination claim in her Response and addresses only her retaliation and constructive discharge claim. *See* Doc. 16, Resp., 7–13; *see also Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (holding a claim was abandoned when the plaintiff did not address it in his opposition to motions to dismiss and for summary judgment). Regardless, the Court agrees with UT Southwestern that Jones has failed to state a discrimination claim.

The Court finds Jones has not identified an adverse employment action taken against her. "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68 (2006). The only alleged action Jones experienced was Norman "berat[ing] her" when Jones informed Norman she could not attend a scheduled meeting. *See* Doc. 1, Compl., ¶ 26. However, Jones has not alleged that this incident resulted in an "ultimate employment decision[] such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 556. Further, Jones's allegation that UT Southwestern denied a *different individual's* request for increased compensation

cannot form the basis of *Jones*'s discrimination claim. Because Jones cannot identify an adverse employment action taken against her, her discrimination claim must be **DISMISSED**.

2. Retaliation

To state a claim of retaliation, a plaintiff must show "(1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005). A plaintiff has engaged in a protected activity if she either "oppos[es] any practice made an unlawful employment practice by [Title VII] or . . . ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

UT Southwestern again argues that Jones fails to plead an adverse employment action. Doc. 8, Mot. Dismiss, 14. However, the standard for an adverse employment action in a retaliation claim is less stringent than the standard for a discrimination claim. *See McCoy*, 492, F.3d at 559–60. The Supreme Court in *Burlington Northern* clarified that for Title VII retaliation claims, an adverse employment action is any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (internal quotations and citation omitted). While Jones lists several actions in her Response which she asserts constitute adverse employment actions, these actions occurred prior to November 1, 2019, and therefore fall outside Title VII's statute of limitations. *See* Doc. 16, Resp., 11–12; *supra* Section III.A.1. Thus, the Court's analysis is limited to the actions which occurred after November 1, 2019, as discussed in the previous section. *See supra* Section III.B.1.

Even with the Supreme Court's reduced standard in *Burlington Northern*, Jones's allegations fail to state a claim. As stated above, Jones's allegation that UT Southwestern denied a different

individual's request for increased compensation cannot form the basis of Jones's retaliation claim. And Jones's conclusory allegation that Norman berated her cannot constitute a retaliatory adverse employment action. *See Browning v. S.W. Research Inst.*, 288 F. App'x 170, 179–80 (5th Cir. 2008) (finding that alleged "badgering, harassing, and humiliating" behavior and verbal abuse did not constitute retaliatory adverse employment actions); *King v. Louisiana*, 294 F. App'x. 77, 85–86 (5th Cir. 2008) (stating that even in the light most favorable to the plaintiff, a verbal reprimand is not an adverse employment action in the retaliation context). Thus, Jones's retaliation claim must be **DISMISSED**.

### 3. Constructive Discharge

"A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). A constructive discharge claim has two elements. First, a plaintiff must allege her employer discriminated against her to the point that her "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997); *Green v. Brennan*, 578 U.S. 547, 555 (2016). When determining if conditions were sufficiently intolerable, a court considers whether the plaintiff has alleged:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (internal alteration omitted). Importantly, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown*, 237 F.3d at 566.

Second, to state a constructive discharge claim, a plaintiff must have "actually resigned." *Green*, 578 U.S. at 555. Since Jones resigned on November 19, 2019, her constructive discharge claim is timely. *See Muoneke v. Prairie View A&M Univ.*, 2016 WL 3017157, at *5 (S.D. Tex. May 26, 2016) (citing *Green*, 578 U.S. at 564) ("An employee cannot bring a constructive-discharge claim until he is constructively *discharged*, so the limitations period should begin to run for a constructive-discharge claim only after a plaintiff resigns . . . .") (internal quotations and alterations omitted). Jones argues that the otherwise time-barred actions she alleges should be considered under this claim because the actions "are part of the same single claim under consideration." *See* Doc. 16, Resp., 6 (emphasis omitted) (quoting *Green*, 578 U.S. at 556–57). UT Southwestern disagrees with this assertion; however, the Court need not resolve this issue because regardless of the actions considered, Jones cannot state a constructive discharge claim.

Jones fails to plead facts showing her working conditions were "so intolerable" a reasonable employee would have felt compelled to resign. *See Faruki*, 123 F.3d at 319. Jones has not alleged a demotion, reduction in salary, reduction in job responsibilities, reassignment to menial or degrading work, reassignment to work under a younger supervisor, or offer of early retirement or continued employment on terms less favorable than the employee's former status. *See Lauderdale*, 512 F.3d at 167. To the extent Jones attempts to allege discrimination, badgering, harassment, or humiliation by Norman, Jones fails to plead any "aggravating factors," such as Norman intending to compel Jones's resignation. *See Brown*, 237 F.3d at 566 ("Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge . . . ."); *Lauderdale*, 512 F.3d at 167 (holding that evidence of harassment, without "invidious intent to create or perpetuate the intolerable conditions compelling resignation" could not support a constructive discharge claim). Finally, because "the denial of a pay raise alone [cannot] constitute such an aggravated situation that a

reasonable employee would be forced to resign," Jones's allegations of denials of pay raises as to her and other individuals cannot form the basis for a constructive discharge claim. *See Ginn v. Tex. Wired Music, Inc.*, 2001 WL 361044, at *3 (5th Cir. 2001) (internal quotation omitted). Because Jones has not shown sufficiently intolerable conditions, her constructive discharge claim is **DISMISSED**.

C.   *Leave to Amend*

Jones requests leave to amend her pleadings in response to UT Southwestern's Motion to Dismiss. Doc. 16, Resp., 15. Under the Federal Rules of Civil Procedure, the Court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

In determining whether to allow such amendment, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *accord Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). "Generally, an amendment to a complaint is futile where the claim is barred by the statute of limitations." *Teel v. Deloitte & Touche LLP*, 2015 WL 9478187, at *11 (N.D. Tex. Dec. 29, 2015) (Fish, J.); *see also Whitt v. Stephens Cnty.*, 529 F.3d 278, 282–83 (5th Cir. 2008) (holding that any amendment to the complaint would be futile because the claims were time-barred).

Here, any amendment to Jones's claims based on time-barred actions would be futile. Thus, any claims based on these actions are **DISMISSED WITH PREJUDICE** without leave to amend. However, the Court will grant Jones one opportunity to amend her discrimination, retaliation, and

constructive discharge claims based on the alleged actions that are not time barred to address the deficiencies highlighted herein. These claims are **DISMISSED WITHOUT PREJUDICE** with leave to amend.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** UT Southwestern's Motion to Dismiss (Doc. 8). Jones's claims based on timely actions are **DISMISSED WITHOUT PREJUDICE,** and the Court **GRANTS LEAVE** for Jones to file an amended complaint as to the claims identified above. The amended complaint must be filed within **THIRTY (30) DAYS** of this Order. All other claims based on time-barred actions are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

**SIGNED: April 12, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE